UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LARENA HATLEY,<br><br>            Plaintiff,<br><br>   v.<br><br>JOYCE L. MULLAN,<br><br>            Defendant. | Case No. C21-820-JCC-MLP<br><br>REPORT AND RECOMMENDATION |

## I. INTRODUCTION

This matter is before the Court on Defendant Joyce L. Mullan's Motion to Dismiss the Complaint. (Def.'s Mot. (dkt. # 15).) Plaintiff Larena Hatley filed a response (Pl.'s Resp. (dkt. # 23)), but Ms. Mullan did not file a reply. On October 15, 2021, the Court held oral argument on the motion. (Dkt. # 27.) Having considered the parties' submissions, oral argument, the balance of the record, and the governing law, the Court recommends that Ms. Mullan's motion (dkt. # 15) be DENIED.

## II. BACKGROUND

On June 9, 2017, on behalf of Castlewood Standard Schnauzers, Ms. Mullan signed a "Deposit Receipt for Purchase of a Puppy" (the "Deposit Receipt") that named Ms. Hatley and

REPORT AND RECOMMENDATION - 1

her life partner Chance Daniels as "New Puppy Owner[s]" and listed their mailing address in Bellevue, Washington.[1] (Compl. (dkt. # 1) at 23.) The Deposit Receipt stated the total price was $2,500, and that Ms. Mullan had received a $1,000 "deposit [that] guarantees that these new Puppy Owners will have the privilege of owning a Castlewood Standard Schnauzer puppy." (*Id*.) Ms. Hatley alleges the Deposit Receipt "represented an offer of material terms" that she accepted and that, taken together with additional communications, formed a contract entitling her to the next live female puppy produced by Ms. Mullan's breeding female, Rosie. (*Id*. at 5-6.)

On May 2, 2018, Rosie gave birth to the puppy (the "Show Puppy") at issue in this case. (Compl. at 6.) On May 4, 2018, Mr. Daniels paid the remaining $1,500. (*Id*.) Ms. Hatley alleges Ms. Mullan telephoned her to repudiate the contract on June 18, 2018, by which time Ms. Hatley had moved to Colorado. (*Id*. at 7.) The Show Puppy has remained with Ms. Mullan her whole life. (*Id*. at 9.)

On June 26, 2018, Ms. Hatley and Mr. Daniels filed a complaint against Ms. Mullan in the Superior Court for the State of California in the County of Contra Costa.[2] (Dkt. # 17-1.) Ms. Hatley and Mr. Daniels voluntarily dismissed that case without prejudice. (Pl.'s Resp. at 15.) On June 17, 2021, Ms. Hatley filed the instant case before this Court. (Dkt. # 1.)

### III.   DISCUSSION

Ms. Mullan seeks dismissal of this case based on lack of subject matter jurisdiction under Rule 12(b)(1) and lack of personal jurisdiction under Rule 12(b)(2).

---

[1] Mr. Daniels assigned all of his claims related to this matter to Ms. Hatley. (Compl. at 22.)

[2] Judicial notice of public records is permissible on a motion to dismiss. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). The Court therefore takes judicial notice of the court record submitted by Ms. Mullan.

A.      **Subject Matter Jurisdiction**

Ms. Mullan contends this Court lacks subject matter jurisdiction because the amount in controversy does not satisfy the jurisdictional minimum. (Def.'s Mot. at 14.) To establish federal jurisdiction under § 1332(a)(1), a plaintiff must allege: (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1). Diversity of citizenship is not disputed, as Ms. Mullan is a citizen of California and Ms. Hatley is a citizen of Colorado. (Compl. at 1-2.)

In the Ninth Circuit, courts "use the 'legal certainty' test to determine whether the complaint meets § 1332(a)'s amount in controversy requirement." *Naffe v. Frey*, 789 F.3d 1030, 1039 (9th Cir. 2015) (citing *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363-64 (9th Cir. 1986)). "Under this test, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). "Any factual disputes . . . must be resolved in favor of Plaintiffs." *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).

Ms. Mullan contends Ms. Hatley's complaint does not meet the amount in controversy requirement because the alleged value of the Show Puppy was $2,500. (Def.'s Mot. at 14.) She further contends there are "no damages from the sale itself" because she "tendered" a full refund of the $2,500.[3] (*Id.* at 7.) Ms. Mullan's argument ignores all of Ms. Hatley's alleged damages

---

[3] In her briefing on the amount in controversy, Ms. Mullan asserts that the Deposit Receipt she signed was for another puppy (who was stillborn), and that the Show Puppy is not a unique good because Ms. Hatley could obtain another Standard Schnauzer puppy from another source. (Def.'s Mot. at 14.) The Court construes this argument as seeking dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. However, on a Rule 12(b)(6) motion, "[a]ll allegations of fact [in the complaint] are taken as true." *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). Ms. Hatley has adequately pleaded facts showing she purchased a specific animal, and the parties understood the Show Puppy to be hers.

REPORT AND RECOMMENDATION - 3

aside from the value of the Show Puppy. To the contrary, "the amount in controversy includes *all* relief to which the plaintiff is entitled if the action succeeds[.]" *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

Ms. Hatley has pleaded damages well in excess of the $2,500 purchase price of the Show Puppy. Ms. Hatley alleges consequential damages of $80,000 in diminution of value because the Show Puppy was "highly likely" to become a grand champion and $90,000 in lost profits from breeding the Show Puppy. (Compl. at 13.) Ms. Hatley also seeks treble damages and attorney's fees for violation of Washington's Consumer Protection Act. (*Id.* at 18, 20; Pl.'s Resp. at 11.)

Ms. Mullan challenges the claim that the Show Puppy was likely to become a grand champion and the calculation of how many puppies the Show Puppy was likely to produce. (Def.'s Mot. at 26-28.) However, Ms. Mullan fails to establish that Ms. Hatley's claims were not made in good faith. *See Naffe*, 789 F.3d at 1039. The grand champion allegations were based on the Show Puppy's "pedigree" and on Ms. Mullan's own statements that the Show Puppy was "better than" her grandmother, who was a grand champion worth $80,000. (Compl. at 8, 10.) The breeding allegations were based on "current [American Kennel Club]-based statistics" indicating a typical Standard Schnauzer would give birth to 36 puppies, a profit of $90,000 if each cost $2,500. (*Id.* at 13.) Ms. Mullan argues this is inconsistent with allegations that she herself has sold only 24 puppies over the last nine years. (*Id.* at 3.) Ms. Mullan's quibble with Ms. Hatley's method of estimating damages, however, fails to show bad faith or establish to a legal certainty that Ms. Hatley's total claims are for less than the jurisdictional amount. *See Naffe*, 789 F.3d at 1039. Moreover, the difference between 36 and 24 puppies, or $30,000, would not reduce the

---

(*See* Compl. at 6 (Ms. Mullin referred to the Show Puppy as "your girl" in multiple communications with Ms. Hatley).)

REPORT AND RECOMMENDATION - 4

amount in controversy to less than $75,000. Because Ms. Hatley has made good faith claims that total over $75,000, this Court concludes subject matter jurisdiction is proper.

B.   **Personal Jurisdiction**

Ms. Mullan contends Ms. Hatley's complaint fails to establish personal jurisdiction because Washington's long arm statute is inapplicable here. (Def.'s Mot. at 15.) While a plaintiff bears the burden of establishing jurisdiction is proper, "the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Wash. Shoe Co. v. A–Z Sporting Goods, Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012) (internal quotation marks and citation omitted). "Additionally, the court resolves all disputed facts in favor of the plaintiff[.]" *Id*. The court must construe the pleadings and affidavits in the light most favorable to the plaintiff. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"Washington's long-arm statute extends jurisdiction over a defendant to the fullest extent permitted" by due process. *Wash. Shoe*, 704 F.3d at 672 (citing RCW 4.28.185 and *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 771 (1989)). Thus, the Court's jurisdictional analysis "collapses into a single determination of whether the exercise of personal jurisdiction comports with due process." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008); *Wash. Shoe*, 704 F.3d at 672. Federal due process requires that a nonresident defendant have "such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316-17 (1945)).

A court may exercise personal jurisdiction based on either general or specific jurisdiction. Here, Ms. Hatley contends specific jurisdiction is proper. (*See* Pl.'s Resp. at 20.) The Ninth Circuit has articulated the following test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Wash. Shoe*, 704 F.3d at 672; *see also Ford Motor Co.*, 141 S.Ct. at 1025 ("The contacts must be the defendant's own choice and not random, isolated, or fortuitous." (internal quotation marks and citation omitted)). If a plaintiff meets the first two prongs, the burden shifts to the defendant to put forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Ms. Hatley contends this Court has jurisdiction over her contract and related claims because Ms. Mullan "engaged in repeated, consistent communication with the Plaintiff over the course of several years," and they "formed the contract while Ms. Hatley lived in Washington." (Pl.'s Resp. at 20.) She contends personal jurisdiction is proper for tortious claims because "Plaintiff was defrauded in Washington" and Ms. "Mullan's unfair and deceptive acts [and the] wrong of the conversion were felt in Washington[.]" (*Id.* at 21.) Ms. Mullan counters that this Court lacks personal jurisdiction because there was "no business between the parties that was actually transacted in Washington," there were "no tortious acts committed in Washington," and,

REPORT AND RECOMMENDATION - 6

at the time of the alleged breach of the agreement or any tortious acts, Ms. Hatley no longer resided in Washington. (Def.'s Mot. at 16-17.)

Construing the factual allegations in the light most favorable to Ms. Hatley, the Court finds Ms. Mullan purposely directed her activities toward Ms. Hatley when she resided in Washington by engaging in repeated communications over multiple years in order to sell her a puppy. In addition, Ms. Mullan consummated at least one transaction, by accepting the initial deposit of $1,000 and the final payment of $1,500, both sent from Washington state.

Ms. Mullan argues she "only engaged with Plaintiff *at Plaintiff's request*" and Ms. Hatley would have had to travel to California to pick up the Show Puppy. (Def.'s Mot. at 18-19.) She offers no authority for the proposition that this defeats personal jurisdiction. While Ms. Mullan may not have initiated the first contact, she responded to Ms. Hatley's inquiry, and continued interacting with her long after she knew Ms. Hatley lived in Washington. Ms. Hatley alleges Ms. Mullan initiated hundreds of messages and at least 20 phone calls. (Compl. at 4.) In addition, Ms. Mullan sent the Deposit Receipt to Ms. Hatley's Washington mailing address, and accepted payments from Washington.

Ms. Mullan argues a contract alone cannot establish personal jurisdiction, and telephone calls and other means of communication alone cannot establish personal jurisdiction. (Def.'s Mot. at 20 (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 621-22 (9th Cir. 1991).) The Court, however, must consider all of Ms. Mullan's contacts and activities together. *Cf. Roth*, 942 F.2d at 621 (personal jurisdiction over defendants was proper even though plaintiff "initiated all the contacts."). Ms. Mullan initiated numerous contacts with Ms. Hatley and accepted payment from her while she lived in Washington.

Taken together, Ms. Mullan's activities satisfied the first prong of the Ninth Circuit's test for specific jurisdiction. The second prong is satisfied because Ms. Hatley's claims related to the sale of a puppy arise out of Ms. Mullan's forum-related activities directed toward generating that sale. Finally, the third prong is satisfied because Ms. Mullan has not shown the exercise of jurisdiction would be unreasonable. This Court concludes the exercise of personal jurisdiction is proper in this case.

### C. Jurisdiction in Prior Case

Ms. Mullan argues that, by filing a prior case in California state court and alleging venue and jurisdiction were proper there, Ms. Hatley "acknowledged" that jurisdiction was "inappropriate" in this Court. (Def.'s Mot. at 11.) Ms. Mullan offers no authority for the proposition that jurisdiction is appropriate in only a single venue. As discussed above, this Court has both subject matter jurisdiction over Ms. Hatley's claims and personal jurisdiction over Ms. Mullan for the claims.

### IV. CONCLUSION

For the forgoing reasons, the Court recommends that Ms. Mullan's motion to dismiss (dkt. # 15) be DENIED. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on November 12, 2021.

The Clerk is directed to send copies of this order to the parties and to the Honorable John C. Coughenour.

Dated this 27th day of October, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge